# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ADAM M. DOWNS, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 17-0158 (DLF) |
| JSP COMPANIES, INC., *et al.*, | |
| *Defendants.* | |

## **MEMORANDUM OPINION**

Before the Court is the Plaintiffs' Motion for Entry of Default Judgment. Dkt. 9. For the reasons that follow, the motion will be granted in part and denied in part.

## I. BACKGROUND

The plaintiffs are administrators of two benefit plans: the Laborers' International Union North America National Pension Fund ("LIUNA Pension Fund") and the Service Contract Education and Training Trust Fund ("Education Fund"). Compl. ¶¶ 5, 7, Dkt. 1. Both plans are multiemployer employee benefit plans organized under the Employee Retirement Income Security Act ("ERISA"). *Id.* ¶¶ 6, 8; *see* 29 U.S.C. § 1002(3), (37). As set forth in the complaint, the plans provide pension, education, and job training benefits to eligible employees on whose behalf employers contribute pursuant to collective bargaining agreements with the Laborers' International Union or its affiliated district councils. Compl. ¶¶ 6, 8. The complaint alleges that Defendant JSP Companies, Inc. ("JSP") is a corporation with its primary office in Washington, D.C. and an "employer in an industry affecting commerce" as defined by ERISA. *Id.* ¶ 9; *see* 29 U.S.C. § 1002(5), (11), (12). Defendant Jaime Canales is the owner and president of JSP. Compl. ¶ 10. Under ERISA and collective bargaining agreements with Public Service

Employees Union 527, JSP must make contributions to the LIUNA Pension Fund and the Education Fund based on the number of hours worked by its employees in covered employment. *See id.* ¶¶ 11, 12, 23, 24. JSP is also obligated to pay interest on delinquent contributions. *See id.* ¶¶ 17, 29. In this action, the plaintiffs seek a total judgment of $142,397.81 based on allegations that the defendants failed to make required contributions. *Id.* ¶¶ 21, 32; Pls.' Mot. at 1–3, Dkt. 9; Pls.' Mem. at 10–15, Dkt. 9-1. The plaintiffs also seek equitable relief, namely orders directing the defendants to submit to an audit, pay audit costs, pay delinquent contributions and interest identified by the audit, and comply with their contractual and statutory obligations. *See* Compl. at 18–19; Pls.' Mem. at 15–17.

The plaintiffs filed the complaint in this action on January 24, 2017. Dkt 1. Jaime Canales was duly served with the complaint and summons on February 2, 2017. Aff. of Service, Dkt. 3. JSP was duly served with the complaint and summons on February 9, 2017. Aff. of Service, Dkt. 4. Because the defendants did not answer or otherwise respond to the complaint within the time period allotted by Rule 12 of the Federal Rules of Civil Procedure, the plaintiffs requested an entry of default. Dkt. 5. The plaintiffs also mailed a copy of their request to the defendants. Dkt. 5-4. The Clerk of the Court entered default on March 13, 2017. Dkt. 7; Dkt. 8. On September 1, 2017, the plaintiffs moved this Court to enter a default judgment against the defendants under Rule 55(b)(2). Dkt. 9. The case was reassigned to the undersigned judge on December 4, 2017.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure empower a federal district court to enter a default judgment against a defendant who fails to defend its case. Fed. R. Civ. P. 55(b)(2); *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). While federal policy

generally favors resolving disputes on their merits, default judgments are appropriate "when the adversary process has been halted because of an essentially unresponsive party." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quotation marks omitted).

Obtaining a default judgment is a two-step process. First, the plaintiff must request that the Clerk of Court enter default against a party who has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). The Clerk's default entry establishes the defaulting defendant's liability for the well-pleaded allegations of the complaint. *See Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35 (D.D.C. 2014). Second, if the plaintiff's claim is not for a "sum certain," the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b). At that point, the plaintiff "must prove his entitlement to the relief requested using detailed affidavits or documentary evidence on which the court may rely." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (quotation marks and alterations omitted).

When ruling on a motion for default judgment, a court "is required to make an independent determination of the sum to be awarded." *Fanning v. Permanent Sol. Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009) (quotation marks omitted). In that inquiry, the court has "considerable latitude." *Ventura*, 134 F. Supp. 3d at 103 (quotation marks omitted). The court may conduct a hearing to determine damages, Fed. R. Civ. P. 55(b)(2), but the court is not required to do so "as long as it ensures that there is a basis for the damages specified in the default judgment," *Ventura*, 134 F. Supp. 3d at 103 (quotation marks and alterations omitted).

## III. ANALYSIS

### A. Jaime Canales

The plaintiffs assert that Jaime Canales can be held personally liable for the unpaid contributions because he is an "employer" or a "fiduciary" under ERISA. *See* Compl. ¶ 10 (citing 29 U.S.C. § 1002(5), (21)); Pls.' Mem. at 3–4. The Court disagrees.

Canales is JSP's president and owner. "Officers of a corporation do not fall within ERISA's definition of an 'employer,' and thus officers cannot be held personally liable for a corporation's alleged ERISA violations by virtue of their relationship to the employer alone." *Oliver v. Black Knight Asset Mgmt., LLC*, 812 F. Supp. 2d 2, 14–15 (D.D.C. 2011). Rather, ERISA liability for unpaid contributions generally extends to individual corporate owners or officers only when they act as the "alter egos" of their corporations or when circumstances permit piercing the corporate veil. *See Int'l Bhd. of Painters & Allied Trades Union v. George A. Kracher, Inc.*, 856 F.2d 1546, 1550 & n.28 (D.C. Cir. 1988).

Here, the plaintiffs do not sufficiently allege—indeed, it appears they do not attempt to allege—that Canales acted as an "alter ego" of JSP or that circumstances permit piercing the corporate veil. In particular, the plaintiffs do not allege that (1) Canales and JSP lack separate personalities due to a unity of interest and ownership, based on factors such as the nature of corporate ownership and control, failure to maintain adequate corporate records and formalities, and commingling of funds and corporate assets; and (2) an inequitable result would follow if the JSP's actions were treated as those of JSP alone. *See Labadie Coal Co. v. Black*, 672 F.2d 92, 96–97 (D.C. Cir. 1982) (describing standard); *United States v. Dynamic Visions, Inc.*, 220 F. Supp. 3d 16, 25 (D.D.C. 2016). Therefore, Canales cannot be held personally liable as an "employer" under ERISA. *See Oliver v. Black Knight Asset Mgmt., LLC*, 812 F. Supp. 2d 2, 16 (D.D.C. 2011) (dismissing claims where the plaintiffs "failed . . . to allege that [the defendant] did anything outside of his role as President and CEO of the Company that would permit him to be held personally liable under the veil piercing or alter-ego theories . . . .").

In addition, Canales cannot be held liable as a "fiduciary" under ERISA. Relevant here, "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary

4

authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). The inquiry "turns upon whether [the purported fiduciary] has discretionary authority or responsibility in the administration of a plan or regarding the disposition of *plan assets*." *Harris v. Koenig*, 602 F. Supp. 2d 39, 65 (D.D.C. 2009) (emphasis added) (quotation marks omitted).

The prototypical fiduciary of a benefit plan is an administrator or investment advisor, but the plaintiffs cite cases from other circuits to argue that Canales is a "*de facto* fiduciary" of the benefit plans because he exercises discretionary authority over "plan assets." Compl. ¶ 10; Pls.' Mem. at 3–4 (citing, for example, *Perez v. Wallis*, 77 F. Supp. 3d 730, 742–743 (N.D. Ill. 2014)). According to the plaintiffs, the "plan assets" in question are the unpaid contributions and interest owed to the LIUNA Pension Fund and the Education Fund.

The Court finds little support for the plaintiffs' theory in this circuit, but at least one recent case stated, "Courts have recognized that unpaid contributions may be considered plan assets if they are defined as such in the plan agreements." *Int'l Painters & Allied Trades Indus. Pension Fund v. Davanc Contracting, Inc.*, 808 F. Supp. 2d 89, 96 (D.D.C. 2011) (citing, as the sole example, *Galgay v. Gangloff*, 677 F.Supp. 295, 300–01 (M.D. Pa. 1987)). That case proceeded to hold a company's sole owners and officers liable as ERISA fiduciaries because "the Trust Agreement unambiguously provides that all employer contributions are plan assets from the date on which employees' hours worked or paid accrue." *Id.*

The plaintiffs here offer the bare assertion that the unpaid contributions are plan assets "for purposes of ERISA." Compl. ¶¶ 37–38. But they do not allege or demonstrate that the plan agreements actually define unpaid contributions as ERISA "plan assets," much less "unambiguously" so. *See Davanc Contracting, Inc.*, 808 F. Supp. 2d at 96. Therefore, the Court

5

declines to hold Canales personally liable, whether as an ERISA "fiduciary" or "employer," and the Court will deny the plaintiffs' request for default judgment against Canales.

  **B. JSP Companies, Inc.**

  JSP, however, may be held liable. Due to the Clerk's default entry in this case, JSP is deemed liable for the well-pleaded allegations in the complaint, including the allegation that the company failed to make timely contributions to the benefit plans. *Providence Constr.*, 304 F.R.D. at 35. With liability established, the Court must independently determine the amount owed by JSP and whether equitable relief is appropriate.

  JSP's obligations are set forth in collective bargaining agreements with Public Service Employees Union 527. Compl. ¶¶ 12–15, 23–26; Compl. Ex. A, Dkt. 1-2; Compl. Ex. B, Dkt. 1-3. These agreements and ERISA obligate JSP to pay (1) contributions based on the number of hours worked by employees in covered employment; (2) interest on unpaid contributions at a rate of 1.5% per month; (3) mandatory relief under ERISA Section 502(g)(2)(C), calculated as the higher of either an additional interest payment on unpaid contributions at a rate of 1.5% per month, or liquidated damages calculated as 20% of the total contributions owed; and (4) related attorney's fees and costs. Compl. ¶¶ 21, 32. If an employer like JSP does not comply with such agreements, Section 502 of ERISA directs courts to award the amounts owed. *See* 29 U.S.C. § 1132(g) (stating that, if judgment is entered in favor of a benefit plan, the court shall award unpaid contributions, interest at the rate set by the plan, liquidated damages, and reasonable attorney's fees and costs).

  According to the complaint, JSP disregarded its obligations, so the plaintiffs now seek to recover the amounts owed. Compl. ¶¶ 18, 28. In support of their motion for default judgment, the plaintiffs have submitted (1) the declaration of Richard Moreschi, the Assistant Fund Administrator of the LIUNA Pension Fund, *see* Dkt. 9-2; (2) the declaration of Beth Via, the

Fund Administrator for the Education Fund, *see* Dkt. 9-3; and (3) the declaration of James S. Ray, counsel for the plaintiffs, *see* Dkt. 9-4. The declarations set forth the plaintiffs' calculations with specificity. Moreschi's and Via's declarations detail the contributions and interest owed by JSP to their respective funds. Ray's declaration details the costs associated with this action. In particular, the declarations and the entire record establish that JSP owes the following amounts totaling $142,397.81:

- $62,031.13 to the LIUNA Pension Fund for unpaid contributions from November 1, 2012 through July 28, 2017, Moreschi Decl. ¶ 12;

- $31,291.93 to the LIUNA Pension Fund for interest on the unpaid contributions, *id.* ¶ 14;

- $31,291.93 to the LIUNA Pension Fund as mandatory relief under ERISA Section 502(g)(2)(C), calculated as 1.5% of the unpaid contributions, *id.*;

- $318.75 to the LIUNA Pension Fund for half of the filing and service of process fees required for this action, *id.* ¶ 15; Ray Decl. ¶ 22;

- $9,609.78 to the Education Fund for unpaid contributions from November 1, 2012 through July 28, 2017, Via Decl. ¶ 14;

- $3,767.77 to the Education Fund for interest on the unpaid contributions, *id.* ¶ 16;

- $3,767.77 to the Education Fund as mandatory relief under ERISA Section 502(g)(2)(C), calculated as 1.5% of the unpaid contributions, *id.*; and

- $318.75 to the Education Fund for half of the filing and service of process fees required for this action, *id.* ¶ 17; Ray Decl. ¶ 22.

Therefore, pursuant to the agreements between the parties and Section 502 of ERISA, the Court concludes that the plaintiffs are entitled to a total monetary judgment of $142,397.81.

The plaintiffs also seek equitable relief, namely orders directing JSP to (1) pay interest accruing on the above unpaid contributions from August 1, 2017 until the date the contributions are paid, at a rate of 1.5% per month compounded; (2) comply with its obligations to report and

7

contribute in the future; (3) submit to an audit of its payroll records from December 2012 through the date of judgement; (4) remit additional delinquent contributions uncovered by the audit; (5) remit interest for the additional delinquent contributions at a rate of 1.5% per month compounded; and (6) pay for the costs of the audit. *See* Compl. at 17–19: Pls.' Mot. at 2–3; Pls.' Mem. at 15–19. Section 502 authorizes a district court to award "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). "This provision allows the court to construct appropriate remedies which may include an injunction requiring a defendant to permit, and cooperate with, an audit of its books and records." *Carpenters Labor-Mgmt. Pension Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d 237, 242 (D.D.C. 2007) (quotation marks omitted). Further, a court may order that a defendant remit any outstanding contributions discovered in the audit and pay costs associated with the audit. *Boland v. Smith & Rogers Constr. Ltd.*, 201 F. Supp. 3d 144, 150 (D.D.C. 2016); *Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass, LLC*, 635 F. Supp. 2d 21, 26 (D.D.C. 2009); *Freeman-Carder LLC*, 498 F. Supp. at 242. Equitable relief is often awarded when the defendant "has demonstrated no willingness to comply with either its contractual or statutory obligations or to participate in the judicial process." *Serv. Emps. Int'l Nat'l Indus. Pension Fund v. Tandem Dev. Grp., LLC*, No. 16-cv-2524, 2017 WL 3530358, at *3 (D.D.C. Aug. 16, 2017); *Fanning v. Warner Ctr., L.P.*, 999 F. Supp. 2d 263, 267 (D.D.C. 2013); *Zak Architectural Metal & Glass, LLC*, 635 F. Supp. at 26 (D.D.C. 2009).

As demonstrated throughout this action, JSP appears unwilling to participate in the judicial process or comply with its contractual and statutory obligations. JSP has repeatedly disregarded its obligations to submit timely reports and pay monthly contributions to the benefit plans. *See* Compl. ¶¶ 16, 27. Also, JSP's refusal to submit complete contribution reports

continues to make a precise accounting of the outstanding contributions and interests impossible. *Id.* Additionally, the Trust Agreements makes clear that delinquent contributions may result in an audit. *See id.* ¶¶ 15, 26. In such cases, courts routinely grant equitable relief requiring a defendant to cooperate with an audit and pay delinquent contributions identified by the audit. *See Smith & Rogers Constr. Ltd.*, 201 F. Supp. 3d at 150 (citing cases). Thus, pursuant to the Court's discretionary authority under Section 502 of ERISA, the Court grants the equitable relief requested by the plaintiffs against JSP.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Entry of Judgment by Default, Dkt. 9, is granted in part and denied in part. A separate order consistent with this decision accompanies this memorandum opinion.

                                                _____
                                                DABNEY L. FRIEDRICH
                                                United States District Judge

Date: February 22, 2018